IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| vs. | )   CRIMINAL NO. 09-00160-CG |
| | ) |
| JESSE LEROY BUTLER, a/k/a Patron, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This cause is before the court on defendant's motion to suppress evidence seized (Doc 51), the response thereto of the United States (Doc. 68), defendant's motion to suppress in court and out of court identification of the defendant (Doc. 52), and the United State's response thereto (Doc. 69). Because the record is sufficient to resolve the questions presented, the court finds a hearing on the motions is not necessary.[1] Upon review, the court finds that the search warrant was supported by probable cause and that the totality of the circumstances clearly indicate that the identification was reliable. Therefore, defendant's motions to suppress are due to be denied.

I.     BACKGROUND

On July 14, 2009, Alabama State Troopers made a traffic stop of a Ford F-250 pick up truck which resulted in the arrest of the driver of the vehicle, Jose Oscar Torres, for attempting to transport approximately 10 kilograms of powder cocaine. Torres indicated he had contracted with an individual he knew by the name of "Patron" to transport the cocaine from Houston,

---

[1] "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." Franks v. Delaware, 438 U.S. 154, 171(1978). Defendant has not met his burden here.

Texas, to Maryland. According to Torres, he drove the truck to 5946 Saint Moritz Drive, Temple Hills, Maryland, where Patron placed $200,000.00 in cash in a concealed compartment in the truck. Torres drove the truck to Houston, and Patron flew to Houston where he met Torres at a hotel. Patron extracted the cash and loaded the concealed compartment with the cocaine. Torres was then to drive the truck to Maryland and contact Patron when he was in the area of 5946 Saint Moritz Drive, Temple Hills, Maryland. Torres did not know the actual address of the Temple Hills residence but described the residence, gave directions to it, and later directed officers to the residence. Torres stated that he had participated in 3 similar drug shipments for Patron to 5946 Saint Moritz Drive in the past. Torres described Patron as a black male in his mid thirties to early forties with a light complexion and full beard, approximately 6'0" tall, weighing approximately 190 pounds who does not speak Spanish. Investigators found a GPS in the truck and learned that a previous entry put into the GPS requested directions from Arlington, Virginia, to Houston, Texas. Investigators also found a business card[2] for a Houston, Texas Red Roof Inn in Torres' possession. Task Force Officer, Kevin Davis, submitted an affidavit containing the above information with additional details to the magistrate judge requesting a search warrant for the residence located at 5946 Saint Moritz Drive. (Doc. 51-2). The application stated that it sought evidence of violations of 21 U.S.C. §§ 841 and 846 and attached a detailed list of items considered to be "fruits, instrumentalities and evidence" of the alleged violations. On the afternoon of July 15, 2009, a search warrant was issued based on the affidavit.

       Under the agents' supervision, Torres made a series of recorded phone calls to "Patron"

---

[2] The affidavit incorrectly described the card as a hotel receipt.

and then with an associate of "Patron" in an attempt to arrange for the controlled delivery. However, attempts to make the controlled delivery were unsuccessful. The residence was searched at approximately 3:00 p.m. on July 16, 2009. Agents found documents in the defendant, Jesse Butler's, name including a birth certificate and a Continental Airlines e-ticket dated July 14, 2009, for a flight from Houston, Texas, to Baltimore, Maryland, and the certificate of title for the Ford F-250 Torres occupied at the time of his arrest. Agents also found $14,960.00 in U.S. currency, a .45 caliber handgun and ammunition, a bag of cocaine, two baggies of marijuana, a digital scale, a razor blade, a bottle of Patron tequila, a Rival heat sealer, and the box for the GPS unit in Torres' Ford F-250.

After completing the search, agents set up surveillance of the residence and at approximately 5:00 p.m., an individual matching the description given by Torres for "Patron" approached the residence driving a rental vehicle. The individual reportedly stared at the residence for a short period of time, drove around the block and stopped to look at the residence a second time. As the vehicle began to leave, agents approached and stopped the vehicle. The driver identified himself as Jesse Butler. Butler was arrested on site based on evidence obtained during execution of the search warrant and the information provided by Torres. An officer then drove Torres by to confirm that agents had arrested the individual Torres knew as "Patron." Torres immediately identified Butler as "Patron."

The defendant now moves to suppress the items seized during the search as well as Torres' out-of-court identification of defendant and any in-court identification Torres might make. As grounds for suppressing the items seized, defendant asserts that the search warrant was issued without probable cause, the supporting affidavit was insufficient, the affidavit was

vague as it did not have a detailed description as to exactly what evidence was located at the defendant's residence and what illegal activity had been conducted by this defendant, and the information for probable cause was stale. Defendant contends that Torres' identification of the defendant should be suppressed because his original identification was unduly suggestive and the totality of the circumstances show that the identification was unreliable.

## II.     DISCUSSION

### A. Motion to suppress evidence seized

Defendant's arguments center around the sufficiency of the affidavit and whether probable cause was established. The court begins with a recitation of "well established law on probable cause":

> "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts[.]" Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To avoid "rigid" legal rules, Gates changed the "two-pronged test" of Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), into a totality of the circumstances test. See Gates, 462 U.S. at 230-35, 103 S.Ct. 2317. Under the Gates totality of the circumstances test, the "veracity" and "basis of knowledge" prongs of Aguilar, for assessing the usefulness of an informant's tips, are not independent. "[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for ... by a strong showing as to the other[.]" Id. at 233, 103 S.Ct. 2317.

United States v. Brundidge, 170 F.3d 1350, 1352-53 (11th Cir. 1999). The "duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39, quoting Jones v. United States, 362 U.S. 257, 271 (1960). Of course, "[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause," and "wholly conclusory" statements do not

meet the probable cause requirement. Gates, 462 U.S. at 239. "[I]nformation [in the warrant application] must be timely for probable cause to exist, for probable cause must exist at the time the magistrate judge issues the search warrant." United States v. Magluta, 198 F.3d 1265, 1271-72 (11th Cir. 1999), vacated in part on other grounds, 203 F.3d 1304 (2000) (quoting United States v. Green, 40 F.3d 1167, 1172 (11th Cir. 1994) and United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994)).

Analyzing the affidavit under the totality of the circumstances, the court finds defendant's argument that there is insufficient support for the search warrant lacks merit. The Supreme Court has stated that "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." Gates, 462 U.S. at 234. In this case, Torres stated that he had contracted with the defendant to transport drugs on four occasions. Torres had first-hand knowledge of the criminal activity at issue and his information was both detailed and timely. The money had been placed in the Ford F-250 from the residence immediately before Torres began his drive from Maryland, and Torres was transporting the cocaine back to Maryland at the time of his arrest. The anticipated delivery of the cocaine was imminent. Torres' information was also consistent with the evidence. The cocaine was found hidden in the truck, the GPS unit had an entry set for a trip from Arlington, Virginia, to Houston, Texas, a business card for a Red Roof Inn in Houston was found in Torres' possession, and Torres provided accurate directions and an accurate description of the residence where the cocaine was reportedly to be delivered. This corroboration provided some indicia of the informant's reliability, although independent police corroboration of a confidential source's

information, per se, is not required.  See United States v. Brundidge, 170 F.3d 1350, 1353 (11th Cir. 1999).³  In addition, corroboration may be accomplished by creating circumstances under which the informant is unlikely to lie. United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995).  In this case, Torres traveled in the custody of federal agents to Temple Hills, Maryland, for the purpose of attempting to make recorded phone calls under the agents' supervision and completing a controlled delivery of the cocaine to the person and residence he had identified. As the United States points out, if the person Torres was calling did not know what Torres was talking about or if the a search of the residence did not substantiate Torres' story, his "lies would likely be discovered in short order and favors falsely curried would dissipate rapidly." See U.S. v. Foree,  43 F.3d 1572, 1576 (11th Cir. 1995) (citations omitted).  In other words, if the information had proved to be false, that fact would have been quickly discovered, making it unlikely Torres would lie.

Defendant's argument that the information was stale also lacks merit.  Torres had been

---

³In a case where the Eleventh Circuit affirmed the District Court's denial of a motion to suppress where the appellant attacked the reliability of the confidential informant, the Court stated,
> [The defendant's] main contention is that probable cause for the search warrant did not exist because the affidavit failed to reflect independent police corroboration of the CI's story.  But we think requiring independent police corroboration--as a per se rule in each and every case--is contrary to Gates and other precedent for two reasons.  First, as we have discussed, Gates criticizes per se rules for the determination of probable cause.  Second, independent police corroboration has never been treated as a requirement in each and every case. See United States v. Harris, 403 U.S. 573, 576, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (approving, without discussing corroboration, an affidavit with no police corroboration); United States v. Farese, 612 F.2d 1376, 1378 (5th Cir.1980) (even though some corroboration of informant's story took place, probable cause likely existed without corroboration).

Brundidge, at 1353.

picked up on July 14, 2009.  The search warrant was issued the next day and the residence was searched the day after that, on July 16, 2009.  The alleged criminal activity was ongoing as the drugs were to be, but had not yet been, transported to the residence in question.

The court finds that the search warrant in this case was supported by probable cause based on corroborated, first hand information supplied by an informant with intimate knowledge of ongoing criminal activity.  The search warrant application specifically identified the location to be searched and the items sought and was tailored to locate items that in the officer's experience[4] are often used in the furtherance of drug trafficking activity.  Under the totality of the circumstances, the court concludes that "the magistrate had a substantial basis for . . . concluding that probable cause existed."  Gates, supra.

### B. Motion to suppress defendant's identification

To suppress identification testimony, a defendant must establish that the identification procedure used was unnecessarily suggestive and created a substantial risk of misidentification. Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987).  Defendant must show not only that the identification procedure was unduly suggestive, but also that the identification was unreliable under the totality of the circumstances. United States v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001). "Factors considered in determining reliability include the opportunity to view the witness at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."Johnson, 817 F.2d at 729 (citations and internal quotations omitted).  Show-up identifications "are not

---

[4] A description of the officer's extensive experience was also included in the affidavit.

unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation." Id.

In this case, there is no evidence that the agents aggravated the suggestiveness of the confrontation.  Additionally, the circumstances do not support a finding that the identification was unreliable.  This was not a random crime against Torres by an unknown perpetrator.  And Torres was not the victim of a crime, but an established accomplice of the defendant in drug distribution activities.  Torres had ample opportunity to observe the defendant prior to the identification because of their history of drug trafficking together.  Torres had met with the defendant only three days earlier and had conducted similar business with the defendant on at least three prior occasions.  It is likely that Torres would have paid great attention to the defendant since they were involved in a risky endeavor.  Torres' description of the defendant was detailed and accurate and there is no evidence that Torres hesitated or was uncertain when he later identified the defendant.  The court finds that the totality of the circumstances clearly indicates that the out of court identification was reliable.  For these same reasons, the court finds no reason to expect a subsequent in-court identification to be unreliable.

## CONCLUSION

For the above stated reasons, defendant's motion to suppress evidence seized (Doc 51), and defendant's motion to suppress in court and out-of-court identification of the defendant (Doc. 52) are both **DENIED.**

**DONE** and **ORDERED** this 23rd day of October, 2009.

/s/ Callie V. S. Granade

**CHIEF UNITED STATES DISTRICT JUDGE**